**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **AZIZALLAH DELKHAH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | CIVIL ACTION |
| v. | ) | |
| | ) | No. 04-2543-KHV |
| **ALLENE MOORE and KDHD,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

**MEMORANDUM AND ORDER**

Azizallah Delkhah filed suit against the Kansas Division of Housing Development and Allene Moore, one of its compliance managers, alleging that they discriminated against him in public housing because of his national origin and retaliated against him in violation of 42 U.S.C. § 1983 and the Fair Housing Act, 42 U.S.C. § 3601 *et seq.* ("FHA"). This matter is before the Court on Defendants' Motion For Summary Judgment (Doc. #69) filed January 23, 2006; defendants' Motion To Strike (Doc. #81) filed March 16, 2006; and Plaintiff's Motion To Strike (Doc. #101) filed May 2, 2006. For reasons stated below, defendants' motions are sustained and plaintiff's motion is overruled.[1]

---

[1] Defendants ask the Court to strike plaintiff's surreply which plaintiff filed without leave of court. See Plaintiff's Answer To Defendants' Reply To Plaintiff's Response To Defendants' Motion For Summary Judgment (Doc. #79). Under D. Kan. Rule 7.1(b), parties are permitted file a dispositive motion, a response and a reply. Surreplies are typically not allowed. See Metzger v. City of Leawood, 144 F. Supp.2d 1225, 1266 (D. Kan. 2001). Surreplies are permitted in rare cases, but not without leave of court. Humphries v. Williams Natural Gas Co., Case No. 96-4196-SAC, 1998 WL 982903, at *1 (D. Kan. Sept. 23, 1998). Plaintiff argues that defendants raised new arguments in their reply brief, but the reply does not raise new issues or evidence which would permit the filing of a surreply. The Court therefore sustains defendants' motion to strike plaintiff's surreply, and will disregard plaintiff's surreply in analyzing defendants' motion for summary judgment. Even if the Court were to consider the arguments in plaintiff's surreply, however, it would reach the same result on defendants' motion for summary judgment.

(continued...)

**Summary Judgment Standards**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(c); accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538-39 (10th Cir. 1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. A "genuine" factual dispute requires more than a mere scintilla of evidence. Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hicks v. City of Watonga, 942 F.2d 737, 743 (10th Cir. 1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87

---

[1](...continued)
Plaintiff asks the Court to strike the affidavits of Allene Moore and Stephen Weatherford, attached to the Memorandum Of Law In Support Of Defendants' Motion For Summary Judgment (Doc. #70) because (1) they are not signed or notarized and (2) they are incorrect, irrelevant and prejudicial. The Court previously granted defendants leave to file signed and notarized affidavits and they did so on April 21, 2006. See Affidavit Of Steven Weatherford (Doc. #98) and Affidavit Of Allene Moore (Doc. #99). The affidavits reflect that Weatherford and Moore signed them in January of 2006, but that defendants did not submit the signed and notarized copies to the Court at that time. As to plaintiff's arguments regarding the accuracy and relevance of the affidavits, plaintiff had an opportunity to present these arguments in his opposition brief. The Court disregards these arguments in plaintiff's belated motion to strike.

(1986); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991). The nonmoving party may not rest on his pleadings but must set forth specific facts. Applied Genetics, 912 F.2d at 1241.

"[W]e must view the record in a light most favorable to the parties opposing the motion for summary judgment." Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991). Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative. Anderson, 477 U.S. at 250-51. "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52.

**Factual Background**

The following material facts are uncontroverted, deemed admitted or, where disputed, viewed in the light most favorable to plaintiff, the non-movant.[2]

Plaintiff is a native of Iran. He is a Section 8 tenant at Pine Tree Cooperative Inc., which provides Section 8 housing in Lawrence, Kansas.[3] Linville Management provides management services for Pine Tree and since June of 2002, the Kansas Division of Housing Development ("KDHD") has been the

---

[2] Defendants did not include the cited deposition transcript for several facts. Unless such facts are independently supported by other cited evidence, the Court has excluded them. To provide context, the Court has supplemented the facts in a few limited respects, based on plaintiff's complaint and the pretrial order.

[3] Section 8 of the United States Housing Act of 1937, 42 U.S.C. § 1437f, is a housing subsidy program funded by the Department of Housing and Urban Development ("HUD").

contract administrator for Pine Tree and other Section 8 properties. KDHD audits Section 8 properties by conducting Management Occupancy Reviews ("MORs") to verify compliance with HUD regulations.[4]

Allene Moore was a KDHD compliance manager, and she traveled to Section 8 properties in 13 counties in northeast Kansas (including Pine Tree) to conduct MORs. During each MOR, Moore rated the property's compliance with HUD regulations and sent her report to the property owner, the property manager and HUD. If KDHD determined that a property was not in compliance, it gave the owner a limited period to comply. If it did not do so, KDHD referred the property to the local HUD office for further action including possible suspension of HUD subsidies.

In November of 2002, Pine Tree asked plaintiff to submit bank statements to verify his income. After receiving statements which indicated that he had $11,524.56 in his bank account, Pine Tree increased his rent from zero to $196 a month. Plaintiff objected, however, and claimed that $10,000 of the amount represented proceeds on his daughters' student loans.

For several years, Pine Tree had failed to perform yearly tenant eligibility updates ("recertifications") which HUD required. In January of 2003, after Pine Tree had completed its updates, Moore conducted an MOR. All of the tenant files which Moore reviewed at Pine Tree, including plaintiff's file, were missing required documentation. Plaintiff asserted that he had no income and that during the relevant time period, he qualified for a full subsidy and utility allowance. Plaintiff's file, however, did not

---

[4] KDHD is now known as Kansas Housing Resources Corporation, Inc. ("KHRC"), a statutory subsidiary of the Kansas Development Finance Authority. KHRC was incorporated in July of 2003, as authorized by K.S.A. § 74-8904(v), and is an agency of the State of Kansas. Before July of 2003, KDHD was a division of the Kansas Department of Commerce. For purposes of this order, references to KDHD include its successor, KHRC.

contain bank statements which supported this assertion. Moore noted the omission, as well as other items needed to comply with HUD regulations. She reviewed plaintiff's limited bank statements and pursuant to HUD regulation, determined that he had regular deposits which had to be included as income to calculate his subsidy. When Moore reported her audit findings to Pine Tree, she advised that under HUD regulations, plaintiff could be asked to explain the deposits.

If a tenant disagreed with an income calculation which changed his rent obligation, he could request an interim recertification. See HUD Occupancy Handbook, 4350.3 Rev.1, Chapter 7, Sections 7-10, 7-11, attached as Exhibit G to Defendants' Memorandum (Doc. #70). He also could contact KDHD and file a tenant complaint. See Affidavit of Allene Moore ¶ 27, attached to Defendants' Memorandum (Doc. #70). KDHD investigates rent calculation complaints. If the complaint involves Fair Housing issues, KDHD forwards the complaint to HUD's Fair Housing Office in Kansas City, Kansas for investigation. If the rent amount is revised, HUD policy provides that the new amount should be applied retroactively. See HUD Occupancy Handbook, 4350.3 Rev.1, Chapter 7, Sections 7-13; Affidavit of Allene Moore ¶ 28, attached to Defendants' Memorandum (Doc. #70). Only property owners, however, are authorized to approve retroactive application of the new rent amount.

Section 8 properties such as Pine Tree are responsible for obtaining evidence of tenant income and preparing rent calculations using a HUD computer program. Pine Tree did not consult or involve Moore in calculating plaintiff's monthly rent or in deciding to increase it from zero to $196 in November of 2002.

In the MOR for 2003, Moore discovered that Pine Tree did not have a copy of the current HUD Handbook on tenant issues and that Pine Tree was using outdated income limits for rent calculations. Pine Tree did not achieve compliance on that MOR. Moore informed Pine Tree and HUD of her findings, and

suggested that Pine Tree get the HUD Handbook and applicable HUD regulations. She also answered general questions such as what Pine Tree should do if a tenant refused to comply with the regulations, and gave her opinion how to interpret relevant HUD regulations.

After the MOR for 2003, Pine Tree gave KDHD evidence of tenant income and eligibility. In March of 2003, Pine Tree asked plaintiff for citizenship papers on his oldest daughter, proof that both of his daughters were full time students and a copy of his oldest daughter's birth certificate. On April 30, 2003, Pine Tree notified plaintiff that because he did not submit the required citizenship papers, his rent obligation would increase from $196 a month to $402 a month (the market rate). In May of 2003, plaintiff asked for an interim recertification and requested that Pine Tree amend his rent amount retroactively to November of 2002. On July 31, 2003, Pine Tree changed plaintiff's rent to zero, but did not make the change retroactive. Plaintiff sent letters to Pine Tree, KDHD and HUD, complaining that the rent reduction should be retroactive.

In January of 2004, Moore conducted another MOR at Pine Tree. Among other deficiencies, she noted that plaintiff's file did not contain required HUD documentation. Pine Tree did not achieve compliance for 2004, and Moore again informed Pine Tree and HUD of her findings. To achieve compliance, Pine Tree later gave KDHD evidence of tenant income and eligibility.

Until plaintiff's deposition in December of 2005, Moore had not met, talked to or corresponded with plaintiff. Moore does not request documents directly from any Section 8 tenants, and she did not request any documents from plaintiff. KDHD and Moore have no authority over or direct involvement in interim recertification procedures or the retroactive application of adjusted rent. Pine Tree is responsible for those functions. Furthermore, KDHD and Moore are not responsible for maintaining tenant files.

With regard to her audits of Pine Tree, Moore applied federal HUD regulations that pertain to Section 8 housing. Moore handled the MORs for Pine Tree and plaintiff's tenant file reviews just as she did all other audits in northeast Kansas. Moore applied the same federal HUD regulations in all MORs. She did not discriminate or retaliate against plaintiff because of his national origin or for any other reason, and HUD did not send her to Pine Tree to investigate a complaint by plaintiff. Plaintiff has no evidence that Moore treated him differently than Section 8 tenants who are not from Iran, or any other tenants. Plaintiff has no evidence that his national origin motivated Moore's alleged wrongful conduct.

On November 1, 2004, plaintiff filed suit against KDHD, Moore, Pine Tree, Jeanne Johnson, a HUD employee named Jim, Linville Management Services and Melva Linville. Plaintiff settled all claims against Pine Tree, Johnson, Linville Management Services and Melva Linville. See Order (Doc. #39) filed September 8, 2005. Plaintiff no longer asserts a claim against Jim. See Pretrial Order (Doc. #67).

Plaintiff's remaining claims are that because of his national origin, KDHD and Moore discriminated against him in violation of 42 U.S.C. § 3604(b) by (1) overstating his income for HUD purposes; (2) increasing his rent; (3) requiring him to submit a birth certificate and citizenship papers; (4) repeatedly asking him for information; (5) denying him interim recertifications; and (6) denying him retroactive application of a lower rent amount. See id. at 8. Plaintiff also alleges that by taking these same actions, KDHD and Moore retaliated against him in violation of 42 U.S.C. § 3617. See id. Under 42 U.S.C. § 1983, plaintiff alleges that KDHD and Moore violated his right to equal protection under the Fourteenth Amendment and retaliated for his exercise of First Amendment rights. In particular, plaintiff alleges that because of his national origin and because he objected to his rent obligation in November of 2002 and requested interim recertification in May of 2003, Moore calculated the deposits in his checking account

as income and helped Pine Tree harass him. See id. at 4.

KDHD and Moore in her official capacity argue that they are entitled to absolute immunity on all claims. On plaintiff's housing discrimination claim under 42 U.S.C. § 3604(b), defendants argue that plaintiff has no evidence that (1) they were involved in the alleged acts, (2) they intended to discriminate because of plaintiff's national origin or (3) they gave more favorable treatment to tenants outside the protected class. On plaintiff's housing retaliation claim under 42 U.S.C. § 3617, defendants argue that plaintiff has no evidence that they retaliated or intentionally discriminated against him. On plaintiff's Section 1983 claims, defendants argue that they are entitled to judgment because (1) they did not act under color of state law; (2) plaintiff has no evidence that they treated others differently; and (3) plaintiff cannot prevail on his First Amendment retaliation claim because he only sought redress of private rights and he has no evidence that protected speech motivated their action. Finally, in her individual capacity, Moore claims qualified immunity on plaintiff's Section 1983 claims.

## **Analysis**

### **I.     Eleventh Amendment Immunity**

KDHD and Moore in her official capacity argue that they are entitled to absolute immunity. The Eleventh Amendment doctrine of sovereign immunity bars actions for damages against a State, its agencies and its officials acting in their official capacities. See Kentucky v. Graham, 473 U.S. 159, 165-167, n.14 (1985); Ambus v. Granite Bd. of Educ., 995 F.2d 992, 994 (10th Cir. 1993) (Eleventh Amendment immunity extends to agencies that act as arms of state); see also Entrup v. Colorado, 127 F.3d 1109, 1997 WL 639322, at *1 (10th Cir. Oct. 14, 1997) (Eleventh Amendment barred suit against Boulder County District Court). In passing the Fair Housing Act and Section 1983, Congress did not intend to abrogate

the immunity of states under the Eleventh Amendment. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 66-71 (1989) (state and its officials acting in official capacities considered arms of state for purposes of Eleventh Amendment); Morris v. Dehaan, 944 F.2d 905, 1991 WL 177995, at *3 (6th Cir. Sept. 12, 1991) (Fair Housing Act not abrogation of Eleventh Amendment immunity); Gregory v. S.C. Dep't of Transp., 289 F. Supp.2d 721, 725 (D.S.C. 2003) (same). Plaintiff does not allege that KDHD and Moore in her official capacity have waived their immunity under the Eleventh Amendment, and the Court sustains defendants' motion for summary judgment as to all claims against KDHD and Moore in her official capacity.[5] Because KDHD and Moore in her official capacity are entitled to Eleventh Amendment immunity, the Court evaluates plaintiff's claims only as to Moore in her individual capacity.

## II.   Discrimination Claim Under Fair Housing Act, 42 U.S.C. § 3604(b)

Plaintiff alleges that because of his national origin, Moore discriminated against him in violation of 42 U.S.C. § 3604(b) by (1) overstating his income for HUD purposes; (2) increasing his rent; (3) requiring him to submit a birth certificate and citizenship papers; (4) asking him repeatedly for information; (5) denying him interim recertifications; and (6) denying him retroactive application of a lower rent amount.[6] Section 3604(b) provides that it is unlawful to discriminate against any person because of national origin in the terms, conditions or privileges of the rental of a dwelling or in the provision of services or facilities in connection therewith.

---

[5] The Court previously explained that the Eleventh Amendment bars plaintiff's Section 1983 claims against KHRC and Moore in her official capacity. See Order (Doc. #48) filed November 14, 2005 at 2 n.1 (citations omitted).

[6] Plaintiff also alleges as a wrongful act that "he spoke out about his civil rights and the failure to follow HUD regulations." Pretrial Order (Doc. #67) at 3. Plaintiff apparently includes this allegation only as a basis for his retaliation claim, which is discussed below.

To establish a prima facie case of disparate treatment under 42 U.S.C. § 3604(b), plaintiff must show that (1) he is a member of a statutorily protected class; and (2) he was not offered the same terms, conditions or privileges of rental of a dwelling or was not provided the same services or facilities in connection therewith made available to others under circumstances giving rise to a reasonable inference of prohibited discrimination.[7]  Khalil v. Farash Corp., 260 F. Supp.2d 582, 588-89 (W.D.N.Y. 2003) (citation omitted).  The elements of an action for housing discrimination closely follow the elements for an action alleging employment discrimination under Title VII.  See Kormoczy v. Sec'y, U.S. Dep't of Hous. & Urban Dev., 53 F.3d 821, 823-24 (7th Cir. 1995).  Plaintiff may establish discriminatory intent either directly, through direct or circumstantial evidence, or indirectly, through the inferential burden shifting method known as the McDonnell Douglas test.  Id. at 824; see McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973).

Moore concedes that plaintiff is a member of a protected class, but argues that he cannot satisfy the second element of a prima facie case because he has no evidence of (1) her involvement in the alleged acts, (2) any intent to discriminate because of plaintiff's national origin or (3) other tenants who received more favorable treatment.  For reasons stated in the Memorandum Of Law In Support Of Defendants' Motion For Summary Judgement (Doc. #70) at 20-24, a reasonable jury could not find that Moore was directly involved in the decisions to increase plaintiff's rent, ask plaintiff for a birth certificate and citizenship papers, repeatedly ask him for information, deny plaintiff's request for interim recertification, or deny

---

[7] Plaintiff does not allege a disparate impact theory.  Even if he had done so, he has not presented evidence that defendant's actions had a discriminatory effect.  Patel v. City of Los Angeles, 47 Fed. Appx. 799, 802 (9th Cir. 2002); Gamble v. City of Escondido, 104 F.3d 300, 306 (9th Cir. 1997) (plaintiff must show significantly adverse or disproportionate impact from facially neutral acts or practices).

retroactive application of the proper rent amount. Johnson, Pine Tree and Linville Management, who are no longer defendants in this case, made those decisions. Plaintiff concedes that he has no evidence that Moore treated non-Iranian or any other Section 8 tenants more favorably than she treated him. For these reasons, the Court sustains defendants' motion for summary judgment on plaintiff's claim under Section 3604(b) of the FHA.

**III.   Retaliation Claim Under Fair Housing Act, 42 U.S.C. § 3617**

Plaintiff asserts that Moore violated 42 U.S.C. § 3617 of the Fair Housing Act. Liberally construed, the pretrial order alleges that because plaintiff spoke out about his civil rights and KDHD's failure to follow HUD regulations, Moore (1) overstated his income for HUD purposes; (2) increased his rent; (3) required him to submit a birth certificate and citizenship papers; (4) asked him repeatedly to provide information; (5) denied him interim recertifications; and (6) denied him retroactive application of a lower rent amount. Under Section 3617, it is unlawful to "coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted of protected by section 3603, 3604, 3605, 3606 of this title." To make out a prima facie case under Section 3617, plaintiff must demonstrate that (1) he is a member of a protected class; (2) he exercised or enjoyed a right protected by Sections 3603 through 3606, or aided or encouraged others in exercising or enjoying such rights; (3) at least in part, defendants' conduct was motivated by intentional discrimination; and (4) defendants' conduct constituted coercion, intimidation, a threat or interference on account of plaintiff having exercised, or aided or encouraged others in exercising, a right protected under Sections 3603 through 3606. See Zhu v. Countrywide Realty Co., 165 F. Supp.2d 1181, 1196 (D. Kan. 2001)

11

(citations omitted).  A violation of Section 3617 may be shown even absent other violations of the Fair Housing Act.  See id.

Moore does not deny that plaintiff is a member of a protected class and that he exercised or enjoyed rights under the FHA.  Moore contends that plaintiff has not demonstrated a genuine issue of material fact, however, on the last two factors of his prima facie case: (1) intentional discrimination; and (2) coercion, intimidation, a threat or interference on account of plaintiff having exercised, or aided or encouraged others in exercising, a right protected under Sections 3603 through 3606.  As explained above, no reasonable jury could find that Moore was involved in the decisions to increase plaintiff's rent, ask plaintiff for a birth certificate and citizenship papers, repeatedly ask for information, deny plaintiff's request for interim recertification, or deny retroactive application of the proper rent amount.  Those decisions were made by defendants who are no longer involved in this case (Johnson, Pine Tree and Linville Management).  Even if plaintiff could show that Moore was tangentially involved in such decisions, no reasonable jury could find that she coerced, intimidated, threatened or interfered with plaintiff because he exercised a right protected under Sections 3603 through 3606.[8]  For these reasons, the Court sustains defendants' motion for summary judgment on plaintiff's retaliation claim under the FHA.

---

[8] In his surreply, plaintiff apparently claims that because he filed a complaint, Moore (1) ignored the complaint; (2) failed to contact him so that he could explain the situation; and (3) ignored HUD regulations and handbooks.  See Plaintiff's Answer To Defendants' Reply To Plaintiff's Response To Defendants' Motion For Summary Judgment (Doc. #79) filed March 14, 2006 at 5-6.  As explained above, the Court disregards plaintiff's surreply because he did not have leave to file it.  In addition, even if the Court considered these new allegations, plaintiff has not come forward with evidence which shows that intentional retaliation motivated Moore's conduct or that her conduct constituted coercion, intimidation, a threat or interference on account of plaintiff having exercised, or aided or encouraged others in exercising, a right protected under Sections 3603 through 3606.

**IV.     Section 1983 Claims Against Moore**

Under 42 U.S.C. § 1983, plaintiff alleges that in her individual capacity, Moore violated his right to equal protection under the Fourteenth Amendment and retaliated for his exercise of First Amendment rights. In particular, plaintiff alleges that because of his national origin and in retaliation for his assertion of FHA rights beginning in November of 2002 when he objected to the increase in his rent obligation, KDHD and Moore calculated his deposits in his checking account as income and helped Pine Tree harass him. Moore argues that she is entitled to summary judgment because (1) she did not act under color of state law; (2) plaintiff has no evidence that she treated others differently; and (3) plaintiff did not speak or seek redress on matters of public concern and he has no evidence that she acted because of his protected speech.

   A.     Color Of State Law

Section 1983 provides a cause of action against persons in their individual capacities acting under color of state law. Kentucky v. Graham, 473 U.S. 159, 165-66 (1985). "Where the challenged action by state employees is nothing more than application of federal rules, the federal involvement in those actions is so pervasive that the actions are taken under color of federal and not state law." Rosas v. Brock, 826 F.2d 1004, *1007 (11th Cir. 1987) (citations omitted); see Crayton v. Shalala, No. 94-1689, 1995 WL 605599, at *6 (N.D. Ala. May 3, 1995) (claim that state agency failed to follow federal rules or regulations does not allege action under color of state law), aff'd in relevant part, 120 F.3d 1217 (11th Cir. 1997). Here, plaintiff challenges Moore's interpretation of HUD regulations and handbooks. Because Moore did not act under color of state law, plaintiff cannot state a claim against her under Section 1983. Therefore the Court sustains defendants' motion for summary judgment on this claim.

B.  Equal Protection

Section 1983 prohibits those acting under color of state law from depriving others of their federal rights. Plaintiff claims that in her individual capacity, Moore treated him more harshly because of his national origin. See Pretrial Order (Doc. #67) at 9. In particular, plaintiff alleges that Moore calculated his deposits in his checking account as income and helped Pine Tree harass him. See id. at 4. To state a Section 1983 claim for violation of the Equal Protection Clause of the Fourteenth Amendment, plaintiff must show that defendant acted with the intent to discriminate against him because of his membership in a protected class. Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001) (citation omitted). The Equal Protection Clause is triggered when the government treats someone differently than another who is similarly situated. Buckley Constr., Inc. v. Shawnee Civic & Cultural Dev. Auth., 933 F.2d 853, 859 (10th Cir. 1991) (citing City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985)); see Grace United Methodist Church v. City of Cheyenne, 427 F.3d 775, 792 (10th Cir. 2005) (equal protection is direction that all persons similarly situated should be treated alike).

Moore argues that plaintiff has no evidence that she treated him differently from Section 8 tenants who were not Iranian. The Court agrees, and plaintiff has so stipulated. Absent evidence that Moore treated others differently, the Court must sustain defendants' motion for summary judgment on plaintiff's equal protection claim.

C.  First Amendment Retaliation Claim

Under 42 U.S.C. § 1983, plaintiff alleges that because he objected to his rent obligation in November of 2002 and requested interim recertification in May of 2003, Moore calculated his checking account deposits as income and encouraged Pine Tree to harass him. The First Amendment protects the

14

right to free speech and the right to petition the government for redress of grievances. The Supreme Court has interpreted the Petition Clause to apply in a variety of circumstances, including the right to petition the judicial branch. Cal. Motor Transp. Co. v. Trucking Unlimited, 404 U.S. 508, 510 (1972) (right of access to courts but one aspect of right of petition). First Amendment retaliation claims are generally, but not always, brought in the public employment context. Van Deelen v. Shawnee Mission Unified Sch. Dist. No. 512, 316 F. Supp.2d 1052, 1057 (D. Kan. 2004); see Connick v. Myers, 461 U.S. 138 (1983); Pickering v. Bd. of Educ., 391 U.S. 563 (1968). In this case, because plaintiff is not an employee of Moore and he has no contractual relationship with her, the Court employs the substantive standard set out in Worrell v. Henry, 219 F.3d 1197 (10th Cir. 2000). See McCook v. Spriner Sch. Dist., 44 Fed. Appx. 896, 903 (10th Cir. 2002). Under Worrell, plaintiff must allege that (1) he engaged in constitutionally protected activity; (2) defendants caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) defendants' action was substantially motivated by his exercise of constitutionally protected conduct. Worrell, 219 F.3d at 1212. Moore argues that she is entitled to summary judgment on plaintiff's retaliation claim because (1) his speech only sought redress for private rights and (2) plaintiff has no evidence that she acted because of his protected conduct. Plaintiff has not directly responded to either argument.

The Court first examines whether plaintiff was engaged in a constitutionally protected activity. Clearly, free speech and petitions to the government are constitutionally protected rights. Under Tenth Circuit law, however, plaintiff must show that his speech or petition touched upon matters of public concern. See Martin v. City of Del City, 179 F.3d 882, 889 (10th Cir. 1999) (adopting position of seven circuits that public employee who has petitioned is in no better position than one who has merely exercised

free speech); see also McCook, 44 Fed. Appx. at 904 (citing with approval view that filing lawsuit to vindicate private rights not matter of public concern); Dishnow v. Sch. Dist. of Rib Lake, 77 F.3d 194, 197 (7th Cir. 1996). Plaintiff does not assert that his objection to his rent obligation involved a pattern of official misconduct, and it appears that his objection merely sought redress for private rights. Accordingly, plaintiff cannot assert a First Amendment retaliation claim under Section 1983 against Moore in her individual capacity. See Gardetto v. Mason, 100 F.3d 803, 813 (10th Cir. 1996) (First Amendment does not protect criticisms of internal management decisions); Richard v. Perkins, 373 F. Supp.2d 1211, 1217-18 (D. Kan. 2005) (First Amendment does not protect redress for private rights).

Even if plaintiff sought redress for matters of public concern protected by the First Amendment, he has presented no evidence on the third element in Worrell, i.e. that Moore acted as she did because he exercised his First Amendment rights. See Worrell, 219 F.3d at 1212; supra text, part III. Pine Tree, not Moore, decided to increase plaintiff's rent in November of 2002. Likewise, Pine Tree handled plaintiff's request for interim recertification in May of 2003. Moore had no authority over or direct involvement in interim recertification procedures or the retroactive application of adjusted rent. Moore handled the MORs for Pine Tree and plaintiff's tenant file reviews just as she did all other audits in northeast Kansas. For these reasons, the Court sustains defendants' motion for summary judgment on plaintiff's First Amendment retaliation claim.

### D. Qualified Immunity

Because plaintiff has not alleged a constitutional violation under Section 1983, Moore is also entitled to qualified immunity on his equal protection and First Amendment retaliation claims. See Roska v. Peterson, 328 F.3d 1230, 1239 (10th Cir. 2003) (absent constitutional violation, plaintiff cannot

overcome qualified immunity defense).

**IT IS THEREFORE ORDERED** that Defendants' Motion For Summary Judgment (Doc. #69) filed January 23, 2006 be and hereby is **SUSTAINED**. The Clerk is directed to enter judgment in favor of Allene Moore and KDHD on all claims.

**IT IS FURTHER ORDERED** that defendants' Motion To Strike (Doc. #81) filed March 16, 2006 be and hereby is **SUSTAINED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion To Strike (Doc. #101) filed May 2, 2006 be and hereby is **OVERRULED**.

Dated this 15th day of May, 2006 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge